## Estate of Annie E. McGovran, deceased.  Appeal of Louisa M. Murdoch.

*Wills—Issue devisavit vel non—Insanity—Delusions.*

An issue devisavit vel non will not be granted where it appears that the testatrix who had formerly entertained trustful and kind feelings for the contestant, suddenly conceived for her an unexplained dislike, which caused testatrix to discriminate in her will against contestant, but the evidence fails to show that this change of feeling was based upon the supposed existence of facts which never existed, and which no rational person in the absence of evidence would have believed to exist, or that there was such a condition of things surrounding the whole case which would not only be consistent with the theory of delusion, but from which the existence of the delusion might reasonably be inferred.

Argued March 9, 1898.  Appeal, No. 421, Jan. T., 1897, by Louisa M. Murdoch, from decree of O. C. Franklin Co., dismissing appeal from register of wills.  Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.  Affirmed.

Appeal from register of wills.

The facts appear by the opinion of JOHN STEWART, P. J., which was as follows:

This is an appeal from the decision of the register admitting to probate a paper purporting to be the last will of Annie E. McGovran.  The testamentary capacity of the testatrix is denied, and we are asked to award an issue to determine this question.

The facts are few.  The testatrix was a single woman, and at the date of the will was considerably advanced beyond the period of middle life.  Her nearest kindred were cousins in the first degree, and of these there were seven, none of whom resided with or near her.  Her personal acquaintance with several of them must have been very slight, and it is not shown to have been very intimate with any of them.  Some resided in Wheeling, one in Washington, one in Baltimore and another in California.  The estate is estimated to be worth about $70,000.  By her will the testatrix devoted a sum not to exceed $5,000 to the erection of a monument in her burial lot; she specifi-

cally bequeaths to George D. McDowell, Esq., a neighbor who had rendered her kind offices, certain railroad stock, and to the two daughters of one of her cousins—Philip Moore—certain stock in the Belmont Nail Company; the entire balance of her estate she directs shall be distributed under the intestate laws of the state, excluding, however, from all participation therein Mrs. Kate Johnson and Mrs. Louisa M. Murdoch, two of her first cousins, the latter being the present contestant. By a codicil to the will, she excludes another cousin, Mrs. Mary Lehr, and revokes the legacy to the daughters of Philip Moore.

The testimony submitted in connection with the appeal raises no question as to the general sanity of the testatrix.   On the contrary, it shows her to have been a person of at least average intelligence, of fair business capacity, abundantly able to take care of herself and her estate, and entirely rational in all her dealings and intercourse with others, notwithstanding certain peculiarities of temperament, tact and habit.   It leaves no doubt, whatever, that when she executed the will, she had a free and intelligent knowledge of the act she was engaged in; that she was at the time possessed of a free knowledge of her property, and had an intelligent perception and understanding of the disposition she desired to make of it, and of the persons and objects she desired to be the recipients of her bounty.   This much, as we understood, was conceded upon the argument; but it was then contended that, notwithstanding the testatrix possessed the qualifications which, ordinarily, is all that the law requires, she was at the time she made this will, and so continued thereafter until her death, under the influence of a delusion with respect to certain of her kindred, those denied participation in her estate, especially Mrs. Louisa M. Murdoch, the contestant, which dominated and controlled her; that it not only found expression in her will, but actually determined its provision, and that in consequence she did not have a sound and disposing mind and memory as to them at least.

An assault on this ground may be just as effective as where general insanity or imbecility is urged, depending wholly upon the force and effect of the evidence offered.   The existence of a delusion in the mind of a testator, influencing the testamentary act, whenever alleged, is always a material consideration, and the question which thereupon arises is, whether the fact

alleged is actually in controversy.   The mere allegation does not put it in controversy; evidence is required to do this, and that of sufficient strength to support a verdict based upon it.

The effort here is to show by evidence that a delusion existed in the mind of the testatrix with reference to the appellant, including also such others of the kindred of same degree, as are excluded by the will, which put her in a hostile attitude towards her and them, and influenced her will as to them.

It may be conceded that the testimony shows clearly enough for present purposes that the feelings of the testatrix towards Mrs. Murdoch, the appellant, underwent a marked change shortly prior to the making of the will; that, whereas, she had entertained for her feelings, which if not shown to be affectionate, were at least trustful and kind, she came to fear and dislike her; that so radical and decided was the change that testatrix attributed at least every attention she received from appellant to mercenary motives, and believed not only that she was scheming through such acts to get a portion of her estate, but experienced the fear that she might take her life the sooner to enjoy it, and for this reason she was unwilling to have her in the house.   It may be further conceded that appellant was discriminated against in the will solely because of the change of feeling, and that there is nothing in the evidence that explains or accounts for it.

But all this falls short of establishing a controversy as to whether this fear and dislike on the part of the testatrix was the result of a delusion.   It is but a step in that direction. Such change of feeling as is here shown does not necessarily, nor even ordinarily, imply a delusion.   Whence did it originate, and upon what, if upon anything, did it rest?   In itself it is, or may be, consistent with testamentary capacity; or, for that matter, with the highest degree of mental soundness.   Standing by itself, it is not a circumstance that calls for explanation. Alienation and estrangement, attended by most radical change of feeling, not perhaps with the extreme distrust and fear here shown, are quite too common and frequent to be referred to as either unnatural or as indicating a disturbed mental condition; the distrust and fear may be exceptions in their degree, but no different inference results.   When the appellant, therefore, showed this condition of mind and feeling on the part of the

testatrix toward herself, she did not then throw upon the other side the burden of showing reason and justification for it.   The burden still rested upon her, as part of her case, to show at least by evidence sufficient to support a verdict, that the change resulted from a delusion, that is to say, that it was without any cause whatever in reason or in fact, but rested wholly on things imagined.   For a delusion is a creation of the imagination.   It is said to be something that springs up spontaneously in the mind, and which rests on no intrinsic evidence of any kind. This part of the burden appellant has wholly failed to meet. Not a single fact or circumstance that we now recall indicated that testatrix, however unreasonable in her prejudices and foolish in her fears she may have been, was under hallucination with respect to the existence of any fact that could have contributed to any change of feeling on her part towards any of her kindred.   So far as appears from the evidence she imagined nothing.   It is not shown that ever in conversation, and she conversed frequently and with many, she attributed to any of them conduct which rested only in her imagination.   She expressed her opinion in regard to them, her preference, her likes and dislikes and even her fears; but, as we have said, these cannot be delusions; they may result from delusions, but are not identical with them.   Her extreme distrust of appellant results from an opinion with respect to her, which may have been, and doubtless was wholly unreasonable and unworthy of her, but it can have no weight in this inquiry, except it be shown that the opinion rests upon a state of facts not real, but imagined.   It is never a question of soundness of view in said investigation, but the proper inquiry always is, whether the party imagined or conceived something to exist which did not in fact exist, and which no rational person, in the absence of evidence would have believed to exist.   In such case, as said by COCKBURN, C. J., in an English case quoted in Taylor v. Trich, 165 Pa. 592, it is manifest that the only way in which said unnatural belief can be accounted for, is that it is the product of mental disorder.

Two methods were open to appellant to establish her right to an issue.   First, by offering evidence to show that the change of feeling on the part of the testatrix toward herself was based upon the supposed existence of facts which never existed, and

which no rational person, in the absence of evidence, would have believed to exist.   Second, by showing a condition of things surrounding the whole case which would not only be consistent with the theory of delusion, but from which the existence of the delusion might reasonably be inferred.

Upon a careful consideration of the testimony submitted, we are of opinion that it fails in both.   A verdict against this will on the testimony before us could not be sustained.

And now, November 4, 1897, the appeal from the register is dismissed, and an issue refused.

*Error assigned* was decree of the court.

*Joshua Sharpe*, of *Sharpe & Sharpe*, and *Charles W. Russell*, for appellant, cited Herster v. Herster, 122 Pa. 264; First Nat. Bank v. Wirebach, 106 Pa. 46; Howard Express Co. v. Wile, 64 Pa. 205; Hill v. Trust Co., 108 Pa. 3; School Furniture Co. v. Warsaw Sch. D., 122 Pa. 501; McCullough's Est., 35 Pitts. Leg. Jour. 169; McTaggart v. Thompson, 14 Pa. 154; Swails v. White, 149 Pa. 263; Bricker v. Lightner, 40 Pa. 205; Bitner v. Bitner, 65 Pa. 347; Thomas v. Carter, 170 Pa. 272; Morse v. Scott, 4 Den. 507; Taylor v. Trich, 165 Pa. 586.

*Garnet Gehr*, of *Gehr & Gehr*, and *O. C. Bowers*, for appellees, cited Douglass's Est., 162 Pa. 568; De Haven's App., 75 Pa. 337; Grubbs v. McDonald, 91 Pa. 241; McMasters v. Blair, 29 Pa. 298; Daly's App., 181 Pa. 207: Cauffman v. Long, 82 Pa. 72; Stevenson v. Stevenson, 33 Pa. 471; 1 Redfield on Wills, 38; Grabill v. Barr, 5 Pa. 443; Thompson v. Kyner, 65 Pa. 368; Egbert v. Egbert, 78 Pa. 326; Miller v. Oestrich, 157 Pa. 264; Thomas v. Carter, 170 Pa. 272; Shreiner v. Shreiner, 178 Pa. 57; Taylor v. Trich, 165 Pa. 586.

PER CURIAM, March 21, 1898:

After a careful examination of the testimony in this case we fail to discover any evidence which in our opinion would have justified a verdict against the will of the testatrix.   The testimony in support of the mental capacity of the testatrix is simply overwhelming.   The alleged delusions which are thought to sustain the charge of testamentary incapacity as to the tes-

.tatrix were not delusions as to facts which affected or might. affect, her feelings toward the appellant.

We think the opinion of the learned court below is an ample vindication of the conclusions reached that an issue should be refused, and we sustain the decree of the court for the reasons. stated therein.

Decree affirmed and appeal dismissed at the cost of the appellant.